UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID GUNN,

        Plaintiff,

v.                                Case No:  6:13-cv-1731-Orl-36TBS

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

        Defendant.

_____

## ORDER

This cause comes before the Court upon the Report and Recommendation ("R&R") filed by Magistrate Judge Thomas B. Smith on April 16, 2014.  Doc. 24.  In the R&R, Magistrate Judge Smith recommends granting Plaintiff David Gunn's ("Gunn") Amended Motion to Remand (the "Remand Motion") (Doc. 19), finding that the Court lacks subject matter jurisdiction over this case.  *Id.*  Defendant United Omaha Life Insurance Company ("Omaha") filed Objections ("Objections") to the R&R on May 1, 2014.  Doc. 25.  Gunn filed his response to the Objections on May 13, 2014 ("Response").  Doc. 26.  As such, this matter is ripe for review.

I.      **Background[1]**

Halifax Hospital Medical Center ("Halifax") was created by a special act ("Special Act") of the state of Florida as a special taxing district and, in turn, Halifax created Staffing, Inc. ("Staffing"), a not-for-profit corporation with Halifax as its sole member.  *See* Doc. 24 at 1-2; Doc. 23 at 4; Doc. 19-1.  Its purpose was to allow Halifax to move its employees from the Florida

_____

[1] The Court includes a brief background here, as the Magistrate Judge's R&R includes a very thorough and detailed Background.

Retirement System into a self-funded retirement program.  Doc. 19-2 at 33.  All of those who work

for Halifax, including Gunn, are employed by Staffing.  *Id.*

Staffing obtained from Omaha an insurance policy that provides long term disability

benefits to eligible employees (the "Policy").  Doc. 1-1; Doc. 2 ¶ 7.   The Policy is part of an

employee welfare benefit plan governed by the Employee Retirement Income Security Act of

1974, 29 U.S.C. §§ 1001-1461 ("ERISA").  Doc. 1 ¶ 2.  Purportedly, Gunn is covered under the

policy.  Doc. 2 ¶ 7.  After Omaha denied Gunn's claim for benefits under that Policy, Gunn filed

suit in state court.  Doc. 2.  Arguing that ERISA's preemptive power rendered all claims relating

to an employee welfare benefit plan federal in nature, Omaha removed the action to federal court

on the basis of federal question jurisdiction. Doc. 1 at 5.

## II.     Standard

When a party makes a timely and specific objection to a finding of fact in a report and

recommendation, the district court should make a *de novo* review of the record with respect to the

factual issues.  28 U.S.C. § 636(b)(1); *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980); *Jeffrey S. v. State*

*Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990).  Federal Rule of Civil

Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written

objections to the proposed findings and recommendations."   Once a timely objection to the Report

and Recommendation is made, the district judge "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is

made." 28 U.S.C. § 636(b)(1)(C).  The district judge may accept, reject, or modify in whole or in

part, the report and recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3).  The district

judge may also receive further evidence or recommit the matter to the magistrate judge with further

instructions.  *Id.*

### III.   Analysis

#### a.   *Report and Recommendation*

As the Magistrate Judge explained, ERISA preempts state laws relating to any employee benefit plan.  Doc. 24 at 5.  However, ERISA *exempts* those employee benefit plans that are governmental plans, which means plans that are established or maintained for its employees by the government.  *See* 29 U.S.C. §§ 1003(b)(1) and 1002(32).  This governmental exemption would only apply here if Halifax is determined to be a political subdivision of Florida and Staffing is its agency or instrumentality, or if Halifax is an agency or instrumentality of Florida and Staffing is so intertwined with Halifax that it too is an agency or instrumentality of Florida.  Doc. 24 at 7.  In its Remand Motion, Gunn argued that Halifax is a political subdivision of Florida, and that Staffing is an agency or instrumentality of Halifax.  *Id.* ¶ 5; Doc. 19 ¶ 6.  Thus, because the Policy was established and maintained by Staffing, Gunn argues that it is a governmental plan exempt from ERISA which deprives this Court of federal question jurisdiction over this action.  *Id.*

The Magistrate Judge found, and the Court agrees, that Halifax is a political subdivision of Florida for purposes of ERISA. Omaha does not dispute this.  *See* Doc. 24 at 9; Doc. 25 at 3.  With respect to whether Staffing is an agency or instrumentality, ERISA does not define those terms. Instead, there are two main tests used by courts in making this determination, neither of which has been adopted by the Eleventh Circuit.  Gunn urges the Court to adopt the test discussed in *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910 (2d Cir. 1987), which the Magistrate Judge applied. Omaha contends that the correct test is one out of the D.C. Circuit, *Alley v. Resolution Trust Corp.*, 984 F.2d 1201 (D.C. Cir. 1993).  Doc. 24 at 10.  The *Rose* test uses six factors to make this determination, which are the same six factors used by the Internal Revenue Service ("IRS") in

interpreting "agency" and "instrumentality."   Alternatively, the *Alley* test, consisting of three factors, focuses on the nature of an entity's relationship to and governance of its employees.

### b. Objections

In its Objections, Omaha argues that the Magistrate Judge adopted the wrong test for determining whether Staffing is an agency or instrumentality of a political subdivision and that the *Alley* test is the more appropriate test for ERISA purposes.   Doc. 25 at 2.   Specifically, Omaha argues that the *Rose* test is inappropriate because it relies on an IRS revenue ruling that, according to Omaha, "is a tax-oriented analysis to determine whether for purposes of tax-exemption rules, a particular entity performs a genuine government function."   *Id.* at 3.   Because ERISA is "a statute meant to regulate the relations between private employees and employers with respect to welfare benefits and pensions," Omaha reasons, the *Alley* test, which focuses on the relationship between the entity and its employees, is more appropriate for assessing whether ERISA "should govern the benefit plan established or maintained by a particular entity."   *Id.* at 3-4.   However, since the IRS is charged with administering ERISA, the Second Circuit in *Rose* gave deference to the IRS' definition of the terms "agency" and "instrumentality," and this Court agrees.   *Id.* at 10.   Indeed, the terms "agency" and "instrumentality" under 26 U.S.C. § 414(d) were added to the   Internal Revenue Code by Title II of ERISA.   *Rose*, 828 F.2d at 918.

The Magistrate Judge adopted the *Rose* test after weighing all other alternatives and concluding that *Alley* was never intended to be applied to entities affiliated with state governments, which implicated federalism concerns.   Doc. 24 at 12-13.   One reason for the exemptions was to protect state authority over relations with state employees.   *Id.* at 12.   Thus, the *Alley* court noted that the *Rose* test would be the more appropriate test where state entities were involved.   *Id.*   The *Alley* case involved a federal entity.   Recently, the Third Circuit agreed, as well as District Courts

in Louisiana and Rhode Island.  *See Koval v. Washington Cnty. Redevelopment Auth.*, 574 F.3d

238, 241-42 (3d Cir. 2009); *Smith v. Culpepper v. Protective Life Ins. Co.*, 944 F. Supp. 2d *Caranci*

*v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 35 (D.R.I. 2000).  Thus, Omaha's

focus on the *Alley* court's reasoning for why its test is the better one falls flat, as the *Alley* court,

itself, stated that its reasoning would not apply where state court entities were involved.  *See*

*generally* Doc. 25 at 4.

Omaha contends that, under the *Rose* test, however, a state entity could evade ERISA by

creating a state-controlled entity but which evades state pension rules and programs for its

employees.  Doc. 25 at 6.  Omaha also argues that this test is inapplicable because Staffing's

employees are not state employees, pointing out that the sole purpose of Staffing was to allow

Halifax to move its employees *from* the Florida Retirement System into a self-funded private

retirement program.  According to Omaha, this evidences an intent to deprive Staffing's employees

of access to the kind of government-backed retirement plan exempt from ERISA coverage.  *Id.* at

7-8.  Since Staffing does not itself have the power to levy taxes, Omaha avers, Staffing's

employees run the risk of being underfunded, which was the whole purpose of having ERISA

protection in the first place as well as the purpose for excluding governmental plans from ERISA

protection.  *Id.* at 8-9, 11; *see, e.g. McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1257,

1276 (10th Cir. 1998).

Indeed, Congress had several reasons for  exempting governmental plans.  Governmental

plans were considered to be more generous in their vesting provisions, a government's ability to

tax was  considered an adequate substitute for the minimum funding standards and termination

insurance provided by ERISA, there was concern that the imposition of minimal  funding

requirements and other restrictions would impose unacceptable costs on  governmental entities,

and there were federalism concerns.  *Rose*, 828 F.2d at 914.  Specifically, the governmental plan exemption was meant to apply to agencies and instrumentalities of government where the employees were not government employees themselves. Congress, in allowing the ERISA exemption, wanted to preserve the diversity in vesting   and funding provisions of the plans provided by state and local governmental entities and wanted states to pursue a wide variety of employee benefit plans, not just those administered by the states themselves.   There   is no indication that Congress intended all governmental plan employees to be required to  participate in a state-run retirement plan, as opposed to a state-funded private plan.  Congress did not want to unduly burden or interfere with plans  provided by state and local governmental entities, and the *Rose* test appropriately accounts  for those federalism concerns.  Doc. 26 at 2-3; *Rose*, 828 F.2d at 914 ("[t]here are . . . thousands of public employee retirement systems operated by towns, counties, authorities and cities in  addition to the state and Federal plans.  Eligibility, vesting, and  funding provisions are at least as diverse as those in the private sector . . . .").  T h u s , the fact that Staffing was created to move Halifax Hospital's employees out  of the state retirement system is irrelevant here.  In fact, none of the cases cited by the parties in this matter involved plans that covered people who were directly employed by the government.

Additionally, there are many similarities between the *Rose* case and this matter.  There, the Long Island Rail Road ("LIRR") was owned by the Metropolitan Transportation Authority ("MTA"), which was deemed a governmental entity, and the LIRR's members were the same as the members of the MTA.  *Id.*  at 916-17.  And because the LIRR was receiving massive operating subsidies from the state, the court found that the LIRR employees could depend on the state's taxing power to protect their right to retirement income.  *Id.* at 918.  The court also rejected the plaintiff's objection that the state was not obligated to  continue funding the railroad,

observing that many governmental services are funded in the same way. *Id.* Finally, the court noted that the state had demonstrated a commitment to sustain the railroad. *Id.*

Here, Staffing is similarly intertwined with a governmental entity and dependent on funding from Halifax. However, Halifax's ability to tax allays Omaha's concerns that Staffing's employee benefit plans may be underfunded. *See Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 35 (D.R.I. 2000)( finding that "it is clear that a plan is protected from underfunding if the entity in question can rely on the government's taxing power to generate funds, even if it lacks that power itself."). Although Halifax is not legally obligated to continue to fund Staffing, Staffing's board of directors are comprised of the same board of directors of Halifax and Halifax is Staffing's sole member. As such, Halifax has a vested interest in sustaining Staffing. Additionally, as the *Rose* court noted, this nonmandatory funding obligation is no different from the way many other governmental services are funded. Finally, because Staffing is so intertwined with Halifax, federalism concerns and Congress' desire not to interfere with state authority over state plans and benefits is implicated here.

Omaha also contends that the Magistrate Judge failed to reconcile his decision with other cases which found that the exemption for government plans did not apply in similar situations: *Hamilton v. Hartford Life & Acc. Ins.*, 2007 WL 1839780 (D. Ariz. June 26, 2007) (Private, nonprofit corporation established to staff state university hospital was not a governmental entity because it was not a creature of an enabling statute and "does not have governmental powers such as taxation or eminent domain."); *Nebraska Medical Center v. Payne*, 2008 WL 4661473 (D. Neb. Oct. 20, 2008) (hospital health plan was not exempt from ERISA as government plan where nonprofit corporation was not created by statute, its employees were not governed by any governmental merit system, and entity had no power of taxation or eminent domain "or other

powers reserved for sovereign entities"); *NLRB v. Parents & Friends of the Specialized Living Center*, 879 F. 2d 1442 (7th Cir. 1989) (employees of not-for-profit Illinois corporation which operated state-built, licensed, and regulated intermediate care facility could not claim government exemption from NLRB's jurisdiction). However, the cases Omaha cites which have declined to apply the *Rose* test are distinguishable because they dealt with entities that were less entwined with state government. Doc. 26 at 3. For instance, in *Hamilton*, the entity at issue was not created by a government entity. It was run by a private board of directors, none of whom were appointed by any government official or entity, and it had complete control over its budget. Similarly, the entity at issue in *Nebraska* was established by private individuals as a nonprofit corporation, and it was not controlled by any government entity or officials. Last, *NLRB* dealt with National Labor Relations Board ("NLRB") jurisdiction, and was not an ERISA claim. Moreover, the entity at issue there was a nonprofit corporation that was *not* created by the state, and the state did not exercise substantial control over that entity. In sum, due to federalism concerns, the *Alley* test was never intended to be used in cases involving state-affiliated entities as *Halifax* is in this case. Therefore, the Court, as did the Magistrate Judge, declines to adopt that test.

Finally, Omaha argues that even if the *Rose* test is the correct test to apply, the Magistrate Judge applied it incorrectly. Doc. 25 at 3 n.3. Specifically, Omaha points out that Magistrate Judge Smith found that the first factor under the *Rose* test – the purpose factor – was not met because Staffing does not serve any legitimate governmental purpose. *Id.* An entity that serves no legitimate government purpose cannot be treated as a government entity, Omaha reasons. *Id.* On that basis, Omaha avers that the Magistrate Judge's conclusion should be rejected. *Id.* Omaha has provided no authority or basis for its argument here. On the contrary, no one factor under the six-factor test in *Rose* has been said to be dispositive or to carry a greater weight than

the other factors.  Here, Magistrate Judge Smith found that the other five factors weighed in favor of a finding that Staffing is an agency or instrumentality of Halifax, with only one factor weighing against this conclusion.  Clearly, these findings support the Magistrate Judge's legal conclusion.

## IV.   CONCLUSION

After careful consideration of the Magistrate Judge's Report and Recommendation, in conjunction with an independent examination of the court file, the Court is of the opinion that the Report and Recommendation should be adopted, confirmed, and approved in all respects.  The Court agrees with the Magistrate Judge that this Court has no jurisdiction over this matter.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.    The Report and Recommendation of the Magistrate Judge (Doc. 24) is **ADOPTED, CONFIRMED AND APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

2.    Plaintiff David Gunn's Amended Motion to Remand (Doc. 19), is **GRANTED**.

3.    This case is **REMANDED** to the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida.

4.    The Clerk is directed to send a certified copy of this Order to the Clerk of the Court for the Seventh Judicial Circuit in and for Volusia County, Florida.

5.    The Clerk is further directed to terminate any pending motions and deadlines and **CLOSE** this case.

**DONE** and **ORDERED** in Orlando, Florida on May 22, 2014.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
U.S. Magistrate Judge Thomas B. Smith